**DENTONS US LLP**
Erika M. Lopes-McLeman, Esq.
erika.lopes-mcleman@dentons.com
James P. McGann, Esq.
james.mcgann@dentons.com
101 JFK Parkway, 4th Floor
Short Hills, New Jersey 07078
Tel: 973-912-7100
Fax: 973-912-7199
*Attorneys for Plaintiff*
*Kansas City Life Insurance Company*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**TRENTON DIVISION**

| | |
|---|---|
| KANSAS CITY LIFE INSURANCE COMPANY,<br><br>       Plaintiff,<br><br>-against-<br><br>MELISSA HALBACH,<br><br>       Defendant. | Civil Case No. _____<br><br><br>**VERIFIED COMPLAINT**<br>**AND JURY DEMAND** |

Plaintiff Kansas City Life Insurance Company ("Plaintiff") alleges against Defendant Melissa Halbach ("Defendant") the following:

## NATURE OF THE ACTION

1. Plaintiff brings this action to recover physical possession of several dozen life insurance policies and policyholder-related correspondence and materials belonging to Plaintiff and Plaintiff's policyholders, which material Defendant is unlawfully possessing.

2. Plaintiff is licensed to issue life insurance policies in this state.

3. To effectuate the issuance of its life insurance policies, Plaintiff entered into several general agent agreements under which licensed insurance agents would sell Plaintiff's life insurance policies.

4. Upon information and belief, beginning in or around 2017, Defendant began working as an administrative assistant for various licensed insurance agents, who were also general agents for Plaintiff.

5. In this role, Defendant completed office administrative tasks, undertook to assist clients as needed, reviewed life insurance policies, and prepared life insurance policies to be mailed to clients.

6. The life insurance policies Defendant was tasked with handling contain Plaintiff's business forms and confidential information. They also contain significant personal identifying information and confidential information about policyholders and beneficiaries, including: names, addresses, phone numbers, email addressses, banking information, medical history, dates of birth, Social Security numbers, policyholder identification numbers (which themselves can be used to access other confidential financial and health information relating to policyholders), and life insurance proceeds distribution information.

7. Beginning in or around late 2022, Defendant performed all of her duties as set forth above from her home address in the course of her employment by one of Plaintiff's general agents.

8. Beginning in late 2022 until she was terminated in late 2023, Defendant accumulated approximately two hundred (200) life insurance policies and related correspondence and materials in her possession during the course of her employment. Upon information and belief, these policies and related correspondence were hand-delivered or delivered by U.S. mail or other commercial carrier to her home, to her person, or otherwise to her custody. Defendant was tasked with

processing this highly confidential information, including mailing these materials to the appropriate insurance agents and/or directly to policyholders.

9. Defendant was instructed by her employer (Plaintiff's general agent) to mail the aforementioned two hundred (200) life insurance policies to the appropriate clients. Defendant did not fulfill the requested mailing. Defendant also took no steps to return the documents to Plaintiff.

10. Instead, Defendant has reported that she mailed about fifty (50) policies, burned about one hundred (100) policies, and retained about fifty (50) policies, which remain in her possession to this day. Upon information and belief, Defendant's general agent employer did not give her permission to burn those policies nor to retain policies in her possession. Plaintiff likewise did not authorize Defendant to burn related policyholder materials nor to retain them in her possession.

11. Defendant has further reported that the policies remaining in her possession are not stored in a secured or locked way, but are sitting in a room in her home that is accessible to family and visitors.

12. Upon information and belief, Defendant was terminated from her position by the general agent who last employed her on or about October 15, 2023.

13. As a result of her termination, Defendant is no longer a proper or authorized custodian of the roughly fifty (50) life insurance policies that she has asserted are currently in her possession.

14. Defendant first reported to Plaintiff on January 31, 2024 that these documents were in her possession. Prior to that date, Plaintiff was unaware that Defendant had these materials in her possession. Upon learning of Defendant's unauthorized possession of these life insurance policies and related materials, Plaintiff (through counsel) demanded that the subject policies and related materials be returned on multiple occasions, including by telephone on January 31, 2024 and by written correspondence dated February 14, 2024, March 12, 2024, and May 31, 2024.

15. Plaintiff has repeatedly informed Defendant that these materials contain confidential information belonging to Plaintiff and Plaintiff's policyholders, which Defendant is no longer authorized to possess.  In response, Defendant has repeatedly refused to return the materials or make them available to Plaintiff, instead making vague and threatening statements to Plaintiff in an apparent attempt to leverage this confidential information to bargain for Plaintiff's assistance in obtaining financial compensation for Defendant from her prior general agent employer.

16. Because Defendant has refused to return highly confidential information that she has no authority to possess, Plaintiff has no choice but to pursue relief to protect its policyholders and to reclaim its own documents and information.

17. Accordingly, Plaintiff brings this action to recover physical possession of the life insurance policies from Defendant.

## THE PARTIES

18. Plaintiff Kansas City Life Insurance Company is a life insurance company organized and incorporated under the laws of the State of Missouri, with its principal office located in Kansas City, Missouri.

19. Defendant Melissa Halbach is a natural person and resident of Monmouth County, New Jersey.

## JURISDICTION AND VENUE

20. This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and is between citizens of different states.

21. Indeed were Plaintiff's confidential information to be disclosed Plaintiff would likely incur expenses greater than $75,000.

22. This Court has personal jurisdiction over Defendant because she resides in New Jersey.

23. Venue is proper before this Court under 28 U.S.C. § 1391(b)(1) because Defendant resides in this District.

24. Venue is also proper before this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTUAL BACKGROUND

25. In 2017, Defendant began work as an administrative assistant for general agents with whom Plaintiff had a business relationship.

26. Defendant continued in this role under various general agents of Plaintiff until October 15, 2023.

27. During this time period, Defendant worked for three different general agents who were authorized to transact business with Plaintiff, to obtain business information related to Plaintiff's business, to interact with Plaintiff's policyholders, and to possess policyholders' confidential information.

28. Defendant worked for the first two of these general agents between 2017 and late 2022.

29. The first two general agents conducted their business from a traditional office space.

30. When working for these two general agents, Defendant would also generally perform her duties from an office.

31. Beginning in late 2022, Defendant began working for a third general agent, who, upon information and belief, did not maintain a traditional physical office space in New Jersey for use by Defendant.

32. As such, while Defendant was employed by the third general agent, she worked from home, handling confidential policyholder information until she was terminated on or about October 15, 2023.

**Defendant's Employment Responsibilities and the Confidential Life Insurance Policies and Related Materials**

33. Although she worked for three different general agents, Defendant performed similar duties for each of them.

34. Defendant's responsibilities included office administrative tasks, client assistance, life insurance policy review, and mailing life insurance policies to clients.

35. By virtue of her employment, Defendant was an authorized individual permitted access to review and maintain custody of Plaintiff's life insurance policies until they could be returned to the appropriate agents and/or policyholders.

36. The life insurance policies contain confidential policyholder and beneficiary information including: names, addresses, phone numbers, email addresses, banking information, medical history, dates of birth, Social Security numbers, policyholder identification numbers and life insurance proceeds distribution information.

37. During the course of her employment, Defendant handled hundreds of life insurance policies.  Defendant reported to Plaintiff's counsel that, in the last year of her employment, she handled approximately two hundred (200) life insurance policies.

38. The policies and related documents in Defendant's possession also contain Plaintiff's confidential business information and forms.

39. Some of these life insurance policies were delivered to Defendant's home by personal delivery or by U.S. mail or other commercial carrier.  Other policies and related materials were hand-delivered to Defendant by her employer in-person at an office holiday party in New Jersey in December 2022, pursuant to which the materials were locked in Defendant's vehicle until she moved them to her home working space.

**Defendant's December 15, 2023 Communication to Plaintiff**

40. On or about December 15, 2023, Defendant contacted Plaintiff via email (the "December 15 Email") to inform Plaintiff of what she viewed as a "multi million dollar data breach." Defendant reported that she believed the hand-delivery of insurance policies by her general agent employer to Defendant's possession (and locked vehicle) approximately one year earlier was a data breach.

41. Defendant attached three screenshots containing undated photographs depicting an unspecified number of life insurance policies in Defendant's possession that she reported had been improvidently delivered to her by her employer in 2022.

**Plaintiff's Subsequent Communications with Defendant, Requests for the Return of the Life Insurance Policies and Defendant's Refusal to Relinquish the Policies and Related Materials**

42. Upon receiving the December 15 Email, Plaintiff retained counsel to contact Defendant. Because Plaintiff considers allegations of any data breach to be very serious, and because Plaintiff had questions about how Defendant came to possess confidential information as well as what happened to those materials, Plaintiff took immediate steps to learn more information.

43. Plaintiff's counsel initiated contact with Defendant by letter dated January 11, 2024 (the "January 11 Letter").

44. The January 11 Letter posed a series of questions to Defendant in an effort to better understand the basis for the December 15 Email and take any necessary steps to address same.

45. As prompted by the January 11 Letter, Plaintiff's counsel and Defendant arranged for a telephone discussion to take place on January 31, 2024 (the "January 31 Teleconference") to address the matters set forth in the December 15 Email.

46. The January 31 Teleconference occurred as scheduled and through that discussion, Defendant admitted that of the approximately two hundred (200) policies that were in her

7

possession between 2022 and 2023 (i.e., the last year of her employment), she mailed about fifty (50) policies to policyholders, incinerated about one hundred (100) policies, and retained approximately fifty (50) life insurance policies in her possession.

47. Defendant confirmed that as of the time of the January 31 Teleconference, those approximately fifty (50) policies were currently at her home in Monmouth County, stored in a "cubby" in her living room and not otherwise locked or securely stored.

48. Plaintiff's counsel requested the return of the life insurance policies during the January 31 Teleconference. Defendant has suggested that she is intentionally retaining these materials and will not return them to Plaintiff until her general agent employer (who is not an employee of Plaintiff) pays her money to settle her purported outstanding employment claims for allegedly unpaid wages and unreimbursed expenses. Defendant also suggested to Plaintiff that she would not return the confidential documents because she was considering whether to report her employer for the method by which he delivered Plaintiff's policyholders' information.

49. By letter dated February 14, 2024 (the "February 14 Letter") Plaintiff's counsel again contacted Defendant.

50. In relevant part, the February 14 Letter informed Defendant that because she is "no longer employed by one of [Plaintiff's] agents, it does not appear that [Defendant has] any right or authority to maintain possession of these documents in [Defendant's] home or at all."

51. Plaintiff's counsel then asked Defendant to "confirm to [Plaintiff] a date within the next **ten days** on which [Plaintiff] can schedule a courier to retrieve the documents from [Defendant's] residence." (Emphasis in original).

52. Defendant responded to the February 14 Letter by email dated February 19, 2024 (the "February 19 Email").

53. Defendant conditioned her return of the life insurance policies to Plaintiff upon receipt of unpaid wages and reimbursement of expenses she had allegedly not received from her former general agent employer.

54. By letter dated March 12, 2024 (the "March 12 Letter") Plaintiff's counsel again contacted Defendant to attempt to amicably obtain the life insurance policies in Defendant's possession.

55. On March 12, 2024, Plaintiff's counsel again conveyed to Defendant that her retention of the life insurance policies and related materials was not authorized and that Defendant's refusal to return those policies unless her demands were met was inappropriate.

56. The March 12 Letter concluded with a third request that Defendant return the life insurance policies currently in her possession and stated:

> **If you continue to refuse to return the confidential KCL policyholder information currently in your possession, KCL will move forward to protect its policyholders' data, including by seeking an order from a court compelling the documents' return, by reporting this development to all applicable authorities, or any other legal remedy available to KCL. Moreover, if you fail to return the documents, and policyholder banking information, policyholder numbers, and other sensitive [Personally Identifiable Information] becomes compromised, KCL will seek to hold you personally responsible for any consequences of that disclosure.**

(Emphasis/bolding in original).

57. Finally, the March 12 Letter requested Defendant advise Plaintiff's counsel by March 19, 2024 whether she would return the confidential documents or allow Plaintiff to retrieve the confidential documents in Defendant's possession.

58. Defendant did not respond substantively to Plaintiff counsel's request for the return of the confidential documents, other than to note that she would be away for several weeks.

59. Because Defendant did not respond further, Plaintiff's counsel again contacted Defendant to attempt to recover Plaintiff's property by letter dated May 31, 2024 (the "May 31 Letter").

60. In relevant part, the May 31 Letter informed Defendant that she was "currently in possession of KCL confidential documents that [Defendant did] not have the right to possess given that [Defendant is] no longer employed by KCL's agent."

61. Plaintiff's counsel then alerted Defendant this was Plaintiff's "**fourth and final** request that [Defendant] return the documents in question to KCL."   (Emphasis in original).

62. Plaintiff's counsel requested that Defendant "return the documents, or notify [counsel] to make arrangements for a courier to come and collect the documents, **by no later than June 7, 2024**." (Emphasis in Original).

63. Defendant has not responded to Plaintiff counsel's latest request for the return of the confidential documents.

64. Plaintiff has demonstrated good faith by immediately and continuously taking steps to attempt to secure the return of this confidential information without court intervention.  Due to Defendant's refusal to cooperate or return the information, Plaintiff has no choice but to seek court intervention, particularly in light of the confidential and sensitive nature of the information in Defendant's possession (and the fact that Defendant is no longer employed by a general agent who is authorized to handle such confidential information).

65. At present, Plaintiff is unable to determine which policyholders' information is at issue, because Defendant has either burned that information or is unlawfully retaining it.

66. As of the filing of this Complaint, Defendant has not returned any of the confidential documents or related materials.

## Count One
(Conversion)

67. The foregoing paragraphs are incorporated and realleged as if fully set forth herein.

68. Once terminated from her employment in October 2023, Defendant no longer had any authority to possess Plaintiff's confidential life insurance policies or any other confidential information belonging to Plaintiff or Plaintiff's policyholders.

69. In retaining these documents, Defendant has assumed and exercised the right of ownership over confidential materials that belong to Plaintiff and Plaintiff's policyholders without permission.

70. Plaintiff has on multiple occasions demanded orally and in writing that Defendant return the confidential life insurance policies and related materials in her possession, which Defendant has steadfastly refused to do.  Thus, Defendant has excluded Plaintiff from exercising dominion over property belonging to it and to the policyholders whom have entrusted their sensitive and confidential information to Plaintiff.

71. Defendant also has indicated that she burned about one hundred (100) documents in her possession that belonged to Plaintiff or Plaintiff's policyholders, including policies and related documents.  No one authorized Defendant to destroy policyholder information in this way.

72. Defendant is currently exercising wrongful dominion and control over confidential life insurance policies and related materials belonging to Plaintiff and Plaintiff's policyholders.

## Count Two
(Negligence)

73. The foregoing paragraphs are incorporated and realleged as if fully set forth herein.

74. By virtue of her employment by a general agent of Plaintiff, Defendant owed Plaintiff and Plaintiff's policyholders a duty of care. Specifically, Defendant had a duty to safeguard confidential information belonging to Plaintiff's policyholders and a duty not to unlawfully retain confidential information after she was no longer authorized to do so.

75. Defendant breached that duty of care by failing to deliver the confidential life insurance policies as instructed by her employer, by burning policyholder information in her possession during the course of her employment, and by refusing to cooperate with Plaintiff's counsel to secure confidential information once her employment ended, such as by returning them to Plaintiff or delivering them as directed.

76. Defendant's breach of the duty of care has caused Plaintiff to suffer damages.

### Count Three
(Intentional Destruction of Property)

77. The foregoing paragraphs are incorporated and realleged as if fully set forth herein.

78. The above-described confidential life insurance policies are Plaintiff's property, whether directly or via Plaintiff's role as an insurer of individuals whose property Plaintiff is entrusted and entitled to protect and maintain.

79. Defendant has admitted to intentionally destroying about one hundred (100) of Plaintiff's confidential life insurance policies and other materials by burning them.

80. Plaintiff has sustained damages by way of Defendant's intentional destruction of Plaintiff's property.

### Count Four
(Tortious Interference with Contractual Relationship)

81. The foregoing paragraphs are incorporated and realleged as if fully set forth herein.

82. Plaintiff's confidential life insurance policies constitute contracts with its policyholders.

83. Defendant intentionally interfered with that contractual relationship when she failed to cause the policies to be mailed and when she destroyed about one hundred (100) confidential life insurance policies by burning them.

84. Defendant has continued to interfere with that relationship by refusing to return confidential policyholder information currently in her possession, which limits Plaintiff's ability to serve its customers and also prevents Plaintiff from identifying which policyholder information may be at issue.

85. Plaintiff has suffered damages as a result of Defendant's intentional interference with its contractual relationship with its policyholders.

## **DEMAND FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in its favor on all counts of this Verified Complaint and grant Plaintiff the following relief:

1. Judgment against Defendant;

2. An Order for injunctive relief requiring Defendant to return all of Plaintiff's confidential life insurance policies and related materials in Defendant's possession to Plaintiff;

3. An Order enjoining Defendant from sharing or disseminating any of the confidential information she has obtained by virtue of her possession of the confidential life insurance policies and related materials;

4. An award of compensatory or other damages as permitted for each claim;

5. An award of punitive damages, where permitted;

6. An award of attorneys' fees, costs, and expenses;

7. Pre-judgment and post-judgment interest, where permitted; and

8. Any and all other relief to which Plaintiff may otherwise be entitled.

## **JURY DEMAND**

Plaintiff respectfully demands a trial by jury as to all issues so triable.

## **DESIGNATION OF TRIAL COUNSEL**

Plaintiff hereby designates Erika M. Lopes-McLeman as trial counsel in this matter.

Dated: Short Hills, New Jersey  
        June 10, 2024

DENTONS US LLP

By: */s/ Erika M. Lopes-McLeman*  
Erika M. Lopes-McLeman, Esq.  
101 JFK Parkway  
Short Hills, NJ 07078-2708  
Tel: (973) 912-7159  
erika.lopes-mcleman@dentons.com

*Attorneys for Plaintiff*

## **LOCAL CIVIL RULE 11.2 CERTIFICATION**

I certify under penalty of perjury of the laws of the United States of America, that the matter in controversy is not the subject of any other pending or anticipated litigation in any court or arbitration proceeding.

Dated:    June 10, 2024

*/s/ Erika M. Lopes-McLeman*
Erika M. Lopes-McLeman, Esq.

## VERIFICATION

I, A. Craig Mason, Jr., certify, under penalty of perjury of the laws of the United States of America, that I have read the foregoing Verified Complaint in its entirety and all of the information contained within is true and correct and based on my personal knowledge.

Executed on: June 10, 2024

_____
A. Craig Mason, Jr.
Senior Vice President, General Counsel and Secretary
Kansas City Life Insurance Company